UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
SUSAN A.,[1]                                        )
                                                    )
          Plaintiff,                                )
                                                    )
               v.                                   )          Civil Action No. 23-12236-JCB
                                                    )
COMMISSIONER OF SOCIAL SECURITY, )
                                                    )
          Defendant.                                )
_____)


MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND DEFENDANT'S
MOTION TO AFFIRM THE COMMISSIONER'S DECISION
[Docket Nos. 18, 25]

July 10, 2024

Boal, M.J.

        This is an action for judicial review of a final decision by Martin O'Malley, the

Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's

application for Disability Insurance Benefits ("DIB") benefits. Plaintiff asserts that the October

4, 2022 decision of an administrative law judge ("ALJ") is in error and moves to reverse and

remand the decision for further proceedings.[2] Docket No. 18. The Commissioner, in turn, has

moved for an order affirming his decision. Docket No. 25. For the following reasons, this Court

_____

[1] Plaintiff's name is partially redacted in accordance with Rule 5.2(c)(2)(B) of the Federal Rules
of Civil Procedure and the recommendation of the Committee on Court Administration and Case
Management of the Judicial Conference of the United States.
[2] Plaintiff moves for judgment on the pleadings based on Rule 12(c) of the Federal Rules of Civil
Procedure. However, since December 1, 2022, the procedures for seeking the relief requested by
Plaintiff are governed by the Supplemental Rules for Social Security.

remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for
further findings and/or proceedings consistent with this opinion.[3]

I.    FACTS AND PROCEDURAL HISTORY

A.    Procedural History

On August 4, 2020, Plaintiff applied for benefits under Title II of the Social Security Act
("SSA") alleging disability since March 16, 2020, due, in part, to fibromyalgia, anxiety,
depression, migraines, carpal tunnel, and back complaints. (Administrative Record ("AR") 103,
122). After her claim was denied initially and on reconsideration, on May 24, 2022, ALJ Sean
Teehan held a hearing at which an impartial vocational expert and Plaintiff, represented by
counsel, appeared and testified. (AR 49-96, 122, 144). On October 4, 2022, the ALJ found that
Plaintiff was not disabled from the alleged onset date through the date of the decision. (AR 10-
31). The Appeals Council denied Plaintiff's request for review, (AR 1-3), making ALJ Teehan's
determination the Commissioner's final decision for purposes of judicial review. See 42 U.S.C. §
405(g).

Plaintiff filed this action on September 29, 2023. Docket No. 1. On January 29, 2024,
Plaintiff filed a motion for judgment on the pleadings. Docket No. 18. The government filed a
motion for an order affirming the Commissioner's decision on April 29, 2024. Docket No. 25.

B.    Medical Evidence

On November 13, 2018, Plaintiff suffered an injury while working as a school bus driver
when she was rear-ended by another vehicle at a stop sign. (AR 412). She was evaluated on
August 28, 2019, by Tony Tannoury, M.D., a surgeon at Boston Medical Center. (Id.). Plaintiff

---

[3] On January 10, 2024, the parties consented to the jurisdiction of the undersigned for all
purposes. Docket No. 16.

described predominately lower back pain, but also pain that was "coming into the buttocks and some tingling that goes down the leg on the left side." (Id.). Plaintiff reported that she had not missed any work because of her pain, but she said that it was gradually getting worse. (Id.). Imaging studies showed an L5-S1 disc herniation with severe left lateral recess stenosis, prior laminectomy at that level, and a cervical MRI showed disc bulging at multiple levels. (AR 413, 860, 863). Dr. Tannoury recommended a lumbar fusion surgery if Plaintiff did not experience improvement with more conservative treatments. (AR 413).

On November 14, 2019, Plaintiff was evaluated by Melanie Araujo-Sampaio, NP, where she reported chronic pain, migraines, and depression. (AR 426). NP Araujo-Sampaio prescribed medications, including gabapentin and Norflex for pain and spasms and Prozac for generalized anxiety. (AR 427).

On May 6, 2020, Plaintiff saw Jeffrey Steinberg, M.D., for her migraines, at which time it was noted that her symptoms had completely resolved with medication, and she was doing well. (AR 421-22). A brain MRI was normal with no significant concerning features. (AR 421). Plaintiff was seated comfortably with no edema, coherent, and linear thoughts, euthymic affect, grossly intact cranial nerves, and freely moving limbs without apparent weakness or incoordination. (AR 424). Dr. Steinberg found that Plaintiff was positive for the following symptoms: weight gain; poor sleep; blurry vision; depression; painful joints; numbness in extremities; and constipation. (AR 422-23). A ten point review of systems was negative except as noted in the "History of Present Illness" section of the report. (AR 424).

That summer, Plaintiff was seen by an orthopedic surgeon for pain and cramping in her lower back and legs that reportedly inhibited her functioning. (AR 768, 770). She reported functionally disabling pain that prevented her from living how she wanted to. (AR 770).

Objectively, she looked well and was in no distress with 5/5 strength and normal gait, posture, and balance walking. (AR 769). Her provider discussed the importance of staying as active as possible, explaining that building and strengthening a core muscle group was crucial for sustained improvement. (AR 770); see also (AR 567, 602). Surgery was discussed, of which Plaintiff was in favor. (Id.).

In the fall of 2020, Plaintiff continued to complain of low back pain with bilateral thigh and leg pain. (AR 565, 580). An MRI showed evidence of disc height loss at L5-S1 and dynamic instability at L4-L5. (AR 567). At an October 2020 appointment with Dr. Tannoury, Plaintiff reported that her pain symptoms were worsening over time. (AR 568). Dr. Tannoury opined that Plaintiff was not able to work due to her condition. (AR 570). On examination, Plaintiff had decreased sensation in the posterior calf and indicated she wanted to pursue surgery for definitive treatment. (AR 567).

On October 19, 2020, Plaintiff returned to NP Araujo-Sampaio, where she reported mobility issues, chronic pain, panic attacks, and anxiety. (AR 580-81). She was also noted to have irritable bowel syndrome with constipation. (AR 581). Given the "ongoing significant pain," Plaintiff was prescribed Tizanidine, gabapentin, Amitiza, alprazolam, and Celexa in place of Prozac. (Id.).

On November 5, 2020, Plaintiff underwent an independent psychological evaluation with Edward Powers, Ph.D. (AR 588). On examination, Dr. Powers noted she had generalized anxiety, depressed mood, and diminished self-esteem with no substantial improvement from medications. (AR 589). She was also noted to have some memory impairment, and Dr. Powers opined that no near-term change in her condition was likely. (AR 589-90). Dr. Powers wrote that Plaintiff had a "series of physical health conditions that engender chronic pain having a debilitating impact both

physically and emotionally by description." (AR 590).

On December 8, 2020, Plaintiff received a lumbar epidural steroid injection for pain control. (AR 595). In the same month, she returned to NP Araujo-Sampaio, reporting issues with widespread pain, IBS, headaches, fatigue, and migraines. (AR 844). Her dosages of Celexa and gabapentin were increased, and she was referred for a rheumatological evaluation due to her ongoing chronic symptoms. (Id.).

On December 30, 2020, Plaintiff returned to Dr. Tannoury reporting minimal relief from her steroid injections. (AR 600). She reported intolerable and functionally disabling pain and opted to proceed with a surgical repair including fusion at L4-S1 and laminectomy at L4- L5 and L5-S1 in the lumbar spine. (AR 602). In the interim, Plaintiff received chiropractic treatment for neck pain. (AR 826, 828, 830). She also began receiving therapy through Whaling City Psychological Services. (AR 904).

In late 2020 and early 2021, Plaintiff complained of headaches, anxiety, and pain in her neck, shoulders, back, legs, and hands following the motor vehicle accident. (AR 600, 610, 620, 821, 824, 826, 828, 830, 842, 1257). She reported minimal relief from injections and over the counter medications. (AR 600, 821). At times, Plaintiff displayed limited range of motion, mildly reduced grip strength, positive Phalen's and carpal tunnel compression, pain on palpation, muscular hypertonicity, myofascial trigger points, synovitis in the small joints of her hands, sensory deficits in the median nerve distribution, and segmental dysfunction. (AR 620, 821, 824, 826, 828, 1257). Other times, she showed euthymic mood, no abnormal sensation, 5/5 strength, intact cranial nerves, and normal thoughts, memory, posture, gait, station, range of motion, muscle tone, and reflexes. (AR 601, 613, 620, 821, 842, 1257). Nerve conduction studies and needle EMG testing were normal. (AR 620-21, 849); see also (AR 1260). Cervical spine x-rays

were negative for any fracture or osseous pathology. (AR 822).

In 2021, Plaintiff saw Jeffrey Steinberg, M.D., for her migraine disorder (AR 610). Her insurance stopped paying for Aimovig, so she was offered Botox injections. (AR 615, 913). Her ongoing reported symptoms included weight gain, poor sleep, blurry vision, depression, joint pain, numbness, constipation (AR 617, 611-12, 433, 422-23, 915, 920).

During the spring and summer of 2021, Botox therapy had "eliminated" Plaintiff's headaches (AR 615, 913), and she was "[d]oing well." (AR 616, 914). On examination, she was sitting comfortably with no edema or abnormal sensation, grossly intact cranial nerves, and normal thoughts, memory, gait, station, range of motion, muscle tone, and reflexes. (AR 618, 916-17).

Plaintiff underwent a lumbar fusion in November 2021, (AR 932, 945), after which she reported slightly improved pain, (AR 1079), and stated she was "very pleased" with her recovery, (AR 1081). She was in mild distress with slow and steady gait but looked well and had 5/5 strength and normal balance walking. (AR 1080); see also (AR 950-51).

From early to mid-2022, Plaintiff complained of headaches, brain fog, memory problems, increased fatigue, anxiety, and generalized pain in her back, shoulders, hands, and knees. (AR 1259, 1264, 1267-68, 1270, 1358).

On January 10, 2022, Plaintiff saw NP Araujo-Sampaio for an appointment to follow up after her November 2021 lumbar surgery. (AR 1267). Her surgical site was healing well, although there was some residual swelling. (Id.). Plaintiff's exam was mostly normal, although NP Araujo-Sampaio noted chronic reduced range of motion. (Id.). Plaintiff reported severe and ongoing pain, as well as limited mobility, cognitive issues, and migraines. (Id.). NP Araujo-Sampaio cautioned Plaintiff to use Xanax "only sparingly" because it could affect cognitive function. (AR 1269).

On March 2, 2022, Plaintiff visited a physiatrist, Parakrama Ananta, MD, complaining of, among other things, chronic generalized pain and weakness and increased fatigue. (AR 1259-63). Dr. Ananta performed a variety of tests including Finkelstein's, Romberg's, Spurling's, Hawkins', and O'Brien's, all of which were negative. (AR 1259-60). Dr. Ananta diagnosed Plaintiff with fibromyalgia and chronic myofascial pain. (AR 1260).

On May 5, 2022, Plaintiff was evaluated by Abdessamad El Adnani, NP. (AR 1270). On examination, Plaintiff exhibited certain tender points consistent with fibromyalgia. (AR 1272). NP El Adnani diagnosed Plaintiff with fibromyalgia based on her presentation of widespread pain and chronic fatigue. (Id.).

C.    Opinion Evidence

On November 14, 2020, state agency psychologist Michelle Imber, Ph.D., opined that Plaintiff could focus on simple and/or familiar tasks but with moderate disruption at times due to anxiety and low mood. (AR 118). She further opined that Plaintiff could manage interpersonal reactions appropriately but would have difficulty with negative/critical feedback and could only adjust to change in a low-conflict environment. (Id.).

At the reconsideration level, Carol Montgomery, Ph.D., essentially adopted Dr. Imber's opinion. (AR 139-40). Dr. Montgomery found that Plaintiff would experience moderate disruption to sustained attention due to anxiety and low mood, but that she could generally sustain pace and focus on simple and/or familiar tasks. (AR 139). Regarding Plaintiff's social interaction limitations, Dr. Montgomery found that Plaintiff was moderately limited only in her ability to accept instructions and respond appropriately to criticism from supervisors. (Id.). Dr. Montgomery noted that Plaintiff had worked as a bus driver for many years and managed public contact without significant functional impairment. (AR 139-40).

7

In August 2021, independent examining physician Jerald Katz, M.D., evaluated Plaintiff. (AR 1352-56). Dr. Katz noted that following Plaintiff's accident on November 13, 2018, she immediately returned to work and continued to work until March 2020 "when she stopped working due to COVID but then Dr. Tannoury and Dr. Psichopaidas wrote her notes to keep her out of work so she has been on medical leave ever since." (AR 1353). While Dr. Katz noted that Plaintiff had a history of fibromyalgia, as well as hypothyroidism, anxiety, and depression, he did not further address any of these conditions in his opinion. With respect to his impression of Plaintiff, Dr. Katz stated:

> To a reasonable degree of medical certainty, the patient does have a preexisting history of lumbar spondylosis and had. a prior discectomy on the left side at L5-Sl. She has degenerative disc disease based on X-rays in flexion and extension views with very mild retrolisthesis of L5 on S1 and L4-5. She, however, was completely asymptomatic until the motor vehicle accident and now she has manifested an L5-S1 radiculopathy that has been relatively constant and has not responded to chiropractic care or epidural steroid injections.

> The work related injury, which is the motor vehicle accident of 11/13/2018, appears to have aggravated her pre-existing condition and accelerated her need for treatment. In this case, her treatment has been described as a 360 fusion at L4-5 and L5-S1 due to disc problems and relative instability at L4-5 above the L5-Sl disc segment that is probably causing her impingement.

> I believe the aggravation and acceleration of her arthritis and current symptoms in the lumbar spine are directly related to the motor vehicle accident. I say this because she was completely asymptomatic prior to the motor vehicle accident.

(AR 1355).

Dr. Katz opined that Plaintiff was disabled from any activity that required walking or driving, but he stated that "[s]he certainly can sit and use her upper arms doing a sitting job or desk job." (Id.). He also noted that "she has not reached a medical end point" and that future surgeries were reasonable and necessary. (AR 1355-56).

In January 2022, treating provider NP Araujo Sampaio opined that Plaintiff would be

unable to sit, stand, or walk for more than two hours total in a workday, among other limitations. (AR 1276). She opined that due to lumbar disc herniation and recent surgery, Plaintiff would be unable to sustain concentration and productivity for full-time employment. (AR 1277).

In May 2022, treating provider NP El Adnani opined that Plaintiff's fibromyalgia would preclude sustained attention and concentration for full time work. (AR 1274). He opined that her impairment was expected to produce significant pain and that his diagnosis of fibromyalgia was based on acceptable objective signs and/or laboratory findings. (Id.).

D.    Education And Occupational History

Plaintiff has a tenth grade education and reported past work as a school bus driver. (AR 312-13).

E.   Hearing Testimony

At the May 24, 2022, hearing, Plaintiff testified as follows: She was diagnosed with fibromyalgia thirteen years ago by her primary care provider, NP Araujo-Sampaia, who treated her until approximately April 2022. (AR 66-67). At that time, the medication Plaintiff had been prescribed stopped working, so NP Araujo-Sampaia sent Plaintiff to a rheumatologist, Dr. Fisher. (Id.). Dr. Fisher thereafter increased some of Plaintiff's medications and prescribed her two new kinds of medication. (AR 67).

She was laid off as a bus driver in March 2020 due to COVID-19, but states she could not return due to lower back pain that radiated into her leg, fibromyalgia, migraines with blurred vision, depression, and anxiety. (AR. 60, 62-70). Plaintiff had surgery to address the pain radiating down her leg. (AR 87). She described the pain prior to the surgery as a constant ten-out-of-ten and the pain after the surgery as not constant, but sometimes at a ten-out-of-ten. (Id.). She is six months out from the surgery, and she was told that it would take a year and a half for her to

"get back to normal." (Id.).

She began to experience increased depression, anxiety, fibromyalgia, and back pain beginning in the spring/summer of 2020. (AR 82-83). She stated that being at home doing housework rather than being at work caused her back to hurt more. (AR 64). This made her feel more depressed and anxious. (Id.).

When asked to describe how her fibromyalgia had worsened since June 2020, Plaintiff stated: "[Y]ou can see it on my hands. My hands swell up, and my veins pop up, and I have no strength in my hands whatsoever. I can't really grip stuff. Washing dishes, my dishes go flying." (AR 82).

Surgery and injections did not alleviate her pain. (AR 64-65, 82). She was referred to physical therapy ("PT") but had not yet received an appointment. (AR 65). She received Botox injections for migraines, which helped alleviate her symptoms. (AR. 70, 84).

She takes psychotropic medications for her anxiety and depression but had not seen a mental health professional in over a year. (AR. 68-70).

She cares for her daughter and pets, goes outside, prepares simple meals, performs light cleaning, shops for food in stores, and washes dishes. (AR 73, 76-77, 348-50). She also goes to a bakery and cemetery with her mother almost every day. (AR 74). She occasionally spends time with a friend. (AR 74).

She can sit for twenty minutes to a half an hour before she gets a shooting pain in her lower back and down her leg. (AR 77). Before the increase in her symptoms in June 2020, she was able to sit for the same amount of time. (AR 79).

II.     STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial

evidence. See 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (citations omitted). The Supreme Court has defined substantial evidence as "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citation omitted). The ALJ's decision is "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). However, if a court reverses the Commissioner's decision but there is no clear entitlement to benefits on the basis of the record before the court, the court must remand for additional proceedings. Seavey v. Barnhart, 276 F.3d 1, 11-12 (1st Cir. 2001) ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court should ordinarily remand the case to the agency.") (citation omitted). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

III.    DISCUSSION

A.      Disability Standard And The Commissioner's Decision

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage

11

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for her, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See generally Bowen v. Yuckert, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

> . . . .

> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

The ALJ concluded, following the Commissioner's five-step sequential disability

evaluation, that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff meets the insured status requirements of the SSA through December 31, 2024, and she had not performed substantial gainful activity since her alleged onset date of March 16, 2020. (AR 12-13).

At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease, status-post discectomy (2012) and laminectomy and fusion (11/2021); anxiety disorder; and depressive disorder." (AR 13).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, and 404.1526). (AR 16).

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 404.1567(a) except that she could: (1) lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; (2) stand and/or walk for two hours in an eight-hour workday over a forty-hour workweek; (3) sit for six hours in an eight-hour workday over a forty-hour workweek; (4) occasionally climb stairs and ramps but never ropes, ladders, or scaffolds; and (5) occasionally balance, stoop, crouch, kneel, and crawl. (AR 19-20). The ALJ also found that Plaintiff must avoid concentrated exposure to vibration and vibratory tools, unprotected heights, and moving and dangerous machinery, but she could operate a motor vehicle. The ALJ found that Plaintiff would be able to: (1) understand and carry out instructions for simple routine tasks; (2) maintain concentration, persistence, and pace in the performance of these tasks for two-hour increments over an eight-hour workday, during a forty-hour workweek; and (3) relate to co-workers, supervisors, and the public on a superficial interactional basis, being defined as the exchange of work-related information or the handing-off of products or materials.

(AR 20).

At step five, the ALJ concluded that Plaintiff was not disabled because she could perform jobs existing in significant numbers in the national economy. (AR 30).

    B.    <u>Plaintiff's Challenges To The ALJ's Decision</u>

Plaintiff argues that (1) the ALJ erred in his step two finding that Plaintiff's fibromyalgia was not a medically determinable impairment; (2) the ALJ erred by finding the opinions of state agency psychological consultants Michelle Imber, Ph.D. and Carol Montgomery, Ph.D. persuasive but rejecting portions of their opinions without explanation in violation of 20 C.F.R. § 404.1520c; and (3) the ALJ erred by finding the opinion of consulting physician Jerald Katz, M.D. persuasive but mischaracterizing the opinion as consistent with the ALJ's determination that Plaintiff can stand and/or walk two hours in an eight-hour workday. Docket No. 18-3 at 9.[4]

    1.    <u>Fibromyalgia</u>

Fibromyalgia is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause." <u>Johnson v. Astrue</u>, 597 F.3d 409, 410 (1st Cir. 2009) (quoting <u>Stedman's Medical Dictionary</u>, at 671 (27th ed. 2000)). Musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities. <u>Id.</u> (quoting <u>Harrison's Principles of Internal Medicine</u>, at 2056 (16th ed. 2005)). The American College of Rheumatology ("ACR") has established diagnostic criteria that include "pain on both sides of the body, both above and below the waist, [and] point tenderness in at least 11 of 18 specified sites." <u>Id.</u> (quoting <u>Stedman's Medical Dictionary</u> at 671). "[F]ibromyalgia is a disabling impairment and . . . there are no objective tests which can conclusively confirm the disease." <u>Green-Younger</u>

---

[4] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003) (internal quotations and citations omitted). "[I]n stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." Id. at 108-09.

The SSA issued SSR 12-2p to assist factfinders in the evaluation of fibromyalgia. See SSR 12-2p, 2012 WL 3104869 (2012). Under SSR 12-2p, the SSA will find that a claimant has a medically determinable impairment of fibromyalgia if (1) a physician diagnosed fibromyalgia; (2) the physician provided the evidence described in section II.A or section II.B of SSR 12-2p (setting out the ACR Criteria for the Classification of Fibromyalgia from 1990 and 2010); and (3) "the physician's diagnosis is not inconsistent with the other evidence in the person's case record." Id. at *2. If an ALJ determines that the claimant's fibromyalgia is a medically determinable impairment, SSR 12-2p directs the ALJ to follow the evaluation process that is articulated in SSR 16-3p.[5] Id. at *5.

### a.    ACR Criteria For The Classification Of Fibromyalgia

The SSA has identified two methods for assessing a diagnosis of fibromyalgia. Sinclair v. Berryhill, 266 F. Supp. 3d 545, 552 (D. Mass. 2017). The first method, based on the 1990 ACR Criteria, requires a showing of (1) "[a] history of widespread pain . . . that has persisted (or that persisted) for at least 3 months"; (2) "[a]t least 11 positive tender points on physical examination" that "must be found bilaterally (on the left and right sides of the body) and both above and below the waist" in 18 specified tender point sites; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 2012 WL 3104869

---

[5] SSR 12-2p refers to SSR 96-7p, which was rescinded and superseded by SSR 16-3p.

at 2-3.[6]

The second method, based on the 2010 ACR Criteria, requires a showing of (1) "[a] history of widespread pain[,]" (2) "[r]epeated manifestations of six or more FM symptoms, signs[7], or co-occurring conditions[8], especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome[,]" and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded". Id. at *3.

For both the 1999 and 2010 Criteria, a simple impression or diagnosis of fibromyalgia, without more, does not relieve the claimant of her burden of proof. See, e.g., Sinclair, 266 F. Supp. 3d at 554 (citing SSR 12–2p); James D. P. v. Saul, No. 2:18-CV-00250-JHR, 2019 WL 4784601, at *4 (D. Me. Sept. 30, 2019) (no ALJ error where the doctor "did not discuss whether he had reached a firm diagnosis of fibromyalgia based on the exclusion of other possible

---

[6] Because Plaintiff does not argue that she satisfies the 1990 ACR Criteria, this Court will not address it further.

[7] Symptoms and signs that may be considered include the following:

> muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms.

SSR 12-2p, 2012 WL 3104869 at 3 n.9. The list places particular emphasis on "manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," but it does not limit the signs or symptoms to just those six. Id. at 3.

[8] Co-occurring conditions that may be considered include: irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, and restless leg syndrome. SSR 12-2p, 2012 WL 3104869 at 3 n.10.

causes.").

Here, the ALJ found that while Plaintiff "has visited a physiatrist and rheumatological nurse practitioner, both of whom suggested that her complaints arise out of fibromyalgia," there was no documentation "supporting a positive tender-point test, nor is there evidence supporting the manifestation of six or more of the required fibromyalgia symptoms." (AR 16). He also found that "the record indicates that the claimant's symptoms are attributed, in part, to other disorders, including cervicogenic headaches and degenerative disc disease." (Id.).

Plaintiff argues that she satisfies the 2010 ACR Criteria. Docket No. 18-3 at 12. She asserts that the record establishes that: (1) she has a history of widespread pain lasting greater than three months; (2) she presented repeatedly with six or more symptoms related to fibromyalgia, including fatigue, memory problems/brain fog, sleep problems, irritable bowel syndrome, headache/migraine, blurred vision, and widespread pain; and (3) necessary laboratory studies were obtained to rule out other conditions. Id. Plaintiff also notes that she was diagnosed with fibromyalgia by a specialist in rheumatology. Id.

The record in this case establishes, and the Commissioner does not dispute, that Plaintiff has a history of widespread pain lasting greater than three months. (See, e.g., AR, 426, 565, 581-82, 602, 768, 770, 842-44, 1257-59, 1264, 1267-68, 1270). The record also shows that Plaintiff repeatedly exhibited fibromyalgia symptoms, signs, or co-occurring conditions. However, the parties disagree about whether the evidence shows the requisite six. Plaintiff's treatment notes show, at minimum, reoccurring instances of the following: (1) irritable bowel syndrome; (2) numbness or tingling; (3) insomnia; (4) depression; (5) anxiety disorder; and (6) migraine. (AR 422-23, 426-27, 450, 456-57, 460, 616-17, 620, 842-45, 904-05, 1257, 1265). In addition, on March 2, 2022, Dr. Ananta conducted a variety of tests that returned negative results before

diagnosing Plaintiff with fibromyalgia. (AR 1259-60).[9]

In light of the above, the ALJ erred in concluding that Plaintiff failed to meet of her burden of demonstrating that she had a medically determinable impairment of fibromyalgia. Accordingly, remand on this basis is appropriate. Because this Court remands the case on the basis of the ALJ's decision at step two of the five-step sequential disability evaluation, it does not reach Plaintiff's other arguments which concern decisions made at the later part of the analysis.

IV.   ORDER

For the foregoing reasons, this Court grants Plaintiff's motion only to the extent that she requests remand and denies the Commissioner's motion to affirm. The Court remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further findings and/or proceedings consistent with this opinion.


/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

[9] This Court recognizes that it is not supposed to reweigh the evidence. Colon v. Sec'y of Health & Hum. Servs., 877 F.2d 148, 152–53 (1st Cir. 1989). This Court only reviews some of the evidence of record to determine that remand is not futile.